EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina para Reglamentación de la Industria Lechera<br><br>Recurrida<br><br>v.<br><br>El Farmer, Inc.<br>Licencia Núm. 3510<br><br>Peticionario<br><br>─────────────────────<br><br>Oficina para Reglamentación de la Industria Lechera<br><br>Recurrida<br><br>v.<br><br>El Farmer, Inc.<br>Licencia Núm. 3368<br><br>Peticionario | Certiorari<br><br>2020 TSPR 30<br><br>204 DPR ____ |

Número del Caso:  CC-2019-198


Fecha:  13 de marzo de 2020


Tribunal de Apelaciones:

    Panel III


Abogados de la parte peticionaria:

    Lcdo. Sixto Quiñones Rodríguez
    Lcdo. Edmundo Rosaly Rodríguez



Abogado de la parte recurrida:

    Lcdo. Edward W. Hill Tollinche


Materia: Derecho Apelativo - Las órdenes de descalificación de abogado en la esfera administrativa pueden ser revisadas al amparo del Art. 4.3 de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 2 de agosto de 1988, según enmendada, 3 LPRA sec. 2173.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oficina para la Reglamentación de la Industria Lechera<br><br>Recurrida<br><br>v.<br><br>El Farmer, Inc.<br>Licencia Núm. 3510<br><br>Peticionario<br><br>_____<br><br>Oficina para la Reglamentación de la Industria Lechera<br><br>Recurrida<br><br>v.<br><br>El Farmer, Inc.<br>Licencia Núm. 3368<br><br>Peticionario | CC-2019-198 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 13 de marzo de 2020.

En esta ocasión nos corresponde determinar si una *Orden de descalificación de abogado* pronunciada por una agencia administrativa es revisable antes de que ésta emita el dictamen final en cuanto a los méritos del caso.

Por considerar que el raciocinio que utilizamos en Job Connection Center v. Sups. Econo, 185 DPR 585 (2012) debe ser extensivo a las agencias administrativas -en esta

ocasión- al amparo del Art. 4.3 de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 2 de agosto de 1988, según enmendada, 3 LPRA sec. 2173, contestamos la interrogante en la afirmativa. Veamos.

I

El caso ante nuestra consideración se originó cuando la Oficina para la Reglamentación de la Industria Lechera (ORIL) -agencia administrativa adscrita al Departamento de Agricultura- presentó 2 querellas (Querella Núm. 18-020 y Querella Núm. 18-021) en contra de El Farmer, Inc. (peticionario) y solicitó una vista administrativa sobre revocación de licencia de ganadero. En respuesta, el Oficial Examinador emitió una *Notificación y orden* en la que citó a las partes para dilucidar y adjudicar la procedencia de la revocación de licencia de ganadero.[1]

Posteriormente, la ORIL presentó una *Moción de descalificación* en contra de uno de los representantes legales del peticionario, Lcdo. Edmundo Rosaly Rodríguez, mediante la que alegó que existía "no solo una apariencia de conflicto de intereses, pero también la concretización real de un conflicto y posiblemente una violación a la Ley de Ética Gubernamental".[2] Así, aludió a las siguientes prohibiciones del Art. 4.6 de la Ley de Ética

---

[1] *Notificación y orden,* Apéndice de la Petición de *certiorari*, págs. 28-29.

[2] *Moción de descalificación*, Apéndice de la Petición de *certiorari*, pág. 31.

Gubernamental, 3 LPRA sec. 1857e, sobre restricciones para las actuaciones de los ex servidores públicos:

> (a) Un ex servidor público no puede ofrecer información, intervenir, cooperar, asesorar en forma alguna o representar en cualquier capacidad, directa o indirectamente, a una persona privada, negocio o entidad pública, sobre aquellas acciones oficiales o asuntos en los que intervino mientras trabajó como servidor público.
>
> (b) Un ex servidor público no puede, durante los dos (2) años siguientes a la fecha de terminación de su empleo gubernamental, ofrecer información, intervenir, cooperar, asesorar en forma alguna o representar, directa o indirectamente, a una persona privada, negocio o entidad pública, ante la agencia para la que laboró.

Para sustentar la *Moción de descalificación*, la ORIL específicamente argumentó que en el pasado el licenciado Rosaly Rodríguez fungió como Administrador de la ORIL, que durante su incumbencia participó en los procesos de enmiendas al Reglamento de la agencia, que en la actualidad pretende impugnarlo como representante legal del peticionario y que, además, el licenciado Rosaly Rodríguez intervino como Administrador en una querella previa sobre revocación de licencia de ganadero en contra del peticionario. Finalmente, alegó que lo anterior daba lugar a una apariencia de conducta impropia.[3]

---

[3] Por otro lado, es importante resaltar que -mientras se dilucidaba el asunto de la descalificación que nos atañe- estaba pendiente otra Demanda en el Tribunal de Primera Instancia sobre *injunction* preliminar, *injunction* permanente y sentencia declaratoria en cuanto a la constitucionalidad del Reglamento de la agencia, presentada por El Farmer, Inc. en contra de la Oficina para la Reglamentación de la Industria Lechera (Caso Núm. APE2018-0026). Nótese que en dicho caso la ORIL también presentó una *Moción de descalificación* en contra del Lcdo. Edmundo Rosaly Rodríguez. **No obstante, luego de varios trámites procesales la ORIL retiró la moción de descalificación.**

Por su parte, el peticionario presentó una *Oposición a solicitud de descalificación*. En resumen, el peticionario alegó que la *Moción de descalificación* "tiene el único propósito de excluir permanentemente al licenciado Rosaly Rodríguez de la práctica legal administrativa ante la ORIL".[4] En específico, con respecto a la alegación de que el licenciado Rosaly Rodríguez fungió como Administrador de la ORIL en un caso en contra del peticionario sobre revocación de licencia de ganadero, argumentó que dicho caso es previo, distinto e independiente del caso que nos ocupa, proviene de otra querella y que, además, advino final y firme. Añadió que, "distinto sería que el licenciado Rosaly Rodríguez hubiese asumido la representación legal de dicho caso, pues de eso se trata la prohibición invocada".[5] En cuanto a la alegación sobre la participación del licenciado Rosaly Rodríguez en la elaboración del Reglamento de la ORIL, el peticionario alegó que dicha intervención y posterior representación legal no está prohibida por ninguna disposición legal y que, además, el Reglamento fue aprobado con posterioridad a su renuncia.

Por otro lado, arguyó que "al momento de asumir la representación legal del [peticionario], el término de 2 años dispuesto en el Art. 4.6 (b) de la Ley de Ética

---

[4] *Oposición a solicitud de descalificación,* Apéndice de la Petición de *certiorari,* pág. 35.

[5] Íd.

Gubernamental había expirado".[6] En específico, alegó que sus ejecutorias como Administrador de la ORIL culminaron el 15 de agosto de 2016 y que luego de vencido el término de 2 años establecido en ley asumió la representación legal del peticionario, a saber: el 27 de agosto de 2018.[7]

Por último, el peticionario alegó que la descalificación del licenciado Rosaly Rodríguez violenta su derecho a seleccionar su abogado de preferencia y a obtener una adecuada representación legal, pues equivaldría a tener que prescindir de un abogado con el peritaje necesario para comparecer ante la ORIL.

Al evaluar la *Moción de descalificación*, el Oficial Examinador, específicamente, dispuso lo siguiente:

> El Lcdo. Rosaly cesó sus funciones en ORIL el 15 de agosto de 2016, ciertamente han expirado los dos (2) años establecidos en el artículo 4.6 (b) de la Ley de Ética Gubernamental. **Podemos estipular que el Lcdo. Rosaly no ha tomado ninguna acción oficial en las querellas de epígrafe,** no obstante, sí tomó una acción oficial como Administrador de ORIL en una Querella en la cual, el Querellado en aquel entonces, resulta ser su representado en esta controversia.[8] (Énfasis nuestro).

Así, el Oficial Examinador concluyó que para "evitar un posible conflicto de interés" procedía la descalificación.[9]

---

[6] *Oposición a solicitud de descalificación,* Apéndice de la Petición de *certiorari*, pág. 35.

[7] Es importante destacar que no existe controversia sobre estas fechas.

[8] *Resolución*, Apéndice de la Petición de *certiorari*, pág. 19.

[9] Íd., pág. 20.

Inconforme con la descalificación, el peticionario acudió al Tribunal de Apelaciones mediante un recurso de *certiorari* y señaló lo siguiente:

> Erró el Oficial Examinador al descalificar al Lcdo. Edmundo Rosaly Rodríguez como representante legal del [peticionario], ya que no existe fundamento legal que sostenga dicha determinación. La Resolución emitida es contraria a derecho.[10]

Por su parte, la ORIL presentó una *Moción para la desestimación por falta de jurisdicción y oposición a expedición de auto de certiorari.* En cuanto al planteamiento sobre falta de jurisdicción, la ORIL alegó que la norma establecida en Job Connection Center v. Sups. Econo, supra, que permite la revisión de un asunto interlocutorio (descalificación de abogado), no aplicaba a las agencias administrativas. Añadió que la LPAU no permite la revisión de determinaciones interlocutorias. En la alternativa, arguyó que si el Tribunal de Apelaciones determinaba que tenía jurisdicción, entonces los méritos de la descalificación fueron conforme a derecho.

Así las cosas, el Tribunal de Apelaciones expidió el recurso de *certiorari*, lo acogió como un escrito de revisión judicial y emitió una Sentencia en la que confirmó la Resolución de la ORIL. Con relación al planteamiento de falta de jurisdicción, el Tribunal de Apelaciones resolvió que tenía jurisdicción para revisar

---

[10] Recurso de *certiorari* ante el Tribunal de Apelaciones, Apéndice de la Petición de *certiorari*, pág. 21.

un asunto interlocutorio al amparo del Art. 4.3 de la LPAU, *supra*. En cuanto a los méritos del caso, concluyó lo siguiente:

> [R]esolvemos que no se demostró un craso abuso de discreción, prejuicio o parcialidad por parte de la ORIL al decretar la descalificación del Lcdo. Rosaly Rodríguez. En este caso, el [peticionario] cuenta con otra representación legal que ha formado parte de todos los trámites administrativos desde el inicio del caso hasta el presente y ha participado en todas las vistas celebradas hasta el momento, por lo que los procesos no se verán afectados y no se le violarían los derechos al peticionario.[11]

Inconforme, el peticionario acudió ante este Foro y señaló lo siguiente:

> Erró el Honorable Tribunal de Apelaciones al confirmar la resolución dictada por la ORIL para descalificar al Lcdo. Edmundo Rosaly Rodríguez como representante legal del [peticionario], ya que no existe fundamento legal que sostenga dicha determinación. La sentencia emitida es contraria a derecho y huérfana de fundamentos legales.[12]

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

II

A. La revisión judicial ante las decisiones de las agencias administrativas

El Art. 4.006 de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, establece que el Tribunal de Apelaciones tendrá competencia en los siguientes asuntos:

---

[11] *Sentencia del Tribunal de Apelaciones*, Apéndice de la Petición de *certiorari*, pág. 150. Por otro lado, resaltamos que el peticionario presentó una *Moción de reconsideración* ante el Tribunal de Apelaciones, la cual fue denegada.

[12] Petición de *certiorari*, pág. 4.

.    .    .    .    .    .    .    .

(c) Mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. […] El procedimiento a seguir será de acuerdo con lo establecido por las secs. 2101 et seq. del Título 3, conocidas como la "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". 4 LPRA sec. 24y.

A tenor con lo anterior, el Art. 4.2 de la LPAU, 3 LPRA sec. 9672, dispone que:

Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

.    .    .    .    .    .    .    .

Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

Nótese que esta disposición limita la revisión a las decisiones de las agencias administrativas que cumplan con los requisitos siguientes: (1) que se trate de órdenes o resoluciones finales, y (2) que la parte adversamente

afectada haya agotado todos los remedios provistos por la agencia administrativa.[13]

Ahora bien, con relación a la disposición de que el Tribunal de Apelaciones sólo podrá revisar órdenes o resoluciones finales de una agencia, este Tribunal ha resuelto que **"aun cuando dicho requisito es diferente a la doctrina de agotamiento de remedios, ambas doctrinas tienen un alcance análogo y que, de ordinario, ambas gozan de las mismas excepciones".**[14]

Lo anterior, toda vez que ambas disposiciones permiten que los tribunales discrecionalmente se abstengan de revisar una actuación de una agencia gubernamental hasta que la agencia logre alcanzar una decisión que refleje su posición final.[15] Asimismo, en la esfera federal -de donde proviene nuestra legislación sobre el derecho administrativo- se estableció que "la doctrina sobre agotamiento de remedios y la exigencia de que sólo las resoluciones finales son revisables se basan en los mismos fundamentos".[16]

Hemos reconocido varios factores que operan a favor de preterir la doctrina de agotamiento de remedios, a saber: (1) cuando el dar curso a la acción administrativa

---

[13] Fuentes Bonilla v. ELA, 200 DPR 364, 381 (2018).

[14] Procuradora del Paciente v. MCS, 163 DPR 21, 38 (2004). Véase, además, J. Exam. Tec. Méd. v. Elías et al., 144 DPR 483, 491 (1997).

[15] J. Exam. Tec. Méd. v. Elías et al., supra, pág. 491. Véanse, además: Rivera v. ELA, 121 DPR 582, 593 (1988); ELA v. 12,974 Metros Cuadrados, 90 DPR 506 (1964).

[16] Procuradora del Paciente v. MCS, supra, pág.38, n. 10.

haya de causar un daño inminente, material, sustancial y no teórico o especulativo; (2) cuando el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado; (3) cuando la agencia claramente no tiene jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o (4) cuando el asunto es estrictamente de derecho.[17]

De conformidad con lo anterior, la Sec. 4.3 de la LPAU, 3 LPRA sec. 9673, establece las siguientes excepciones:

> El Tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

B. La descalificación de abogado

En lo pertinente, la Regla 9.3 de Procedimiento Civil,32 LPRA Ap. V, sobre la conducta de los abogados, establece lo siguiente:

> El Tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza o descalificar a un abogado o abogada que incurra en conducta que constituya

---

[17] Procuradora del Paciente v. MCS, supra, pág. 36.

un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el Tribunal, sus representados(as) o sus compañeros(as) abogados(as).

Es sabido que los procedimientos de descalificación de abogados no constituyen de por sí acciones disciplinarias sujetas a la jurisdicción exclusiva del Tribunal Supremo.[18] Como tal, la descalificación es una medida preventiva para evitar posibles infracciones a los Cánones de Ética Profesional.[19] Además, la descalificación funge como un "mecanismo para asegurar la adecuada marcha de un litigio evitando los actos disruptivos provenientes del abogado".[20] Entiéndase que, en el manejo del caso, los jueces tienen la potestad de descalificar a un abogado si ello resulta necesario para lograr la solución justa, rápida y económica de los pleitos.[21] Así, la descalificación puede otorgarse con el fin de: (1) prevenir una violación a cualquiera de los Cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados durante el trámite de un pleito.[22]

Por consiguiente, los tribunales, en el ejercicio de su poder inherente de supervisar y controlar la conducta de los abogados que postulan en sus salas,

---

[18] K-Mart Corp. v. Walgreens of PR, Inc., 121 DPR 633, 637-638 (1988). Véase, además, Liquilux Gas Corp. v. Berríos, Zaragoza, supra, pág. 864.

[19] K-Mart Corp. v. Walgreens of PR, Inc., supra, pág. 637.

[20] R. Hernández Colón, Práctica Jurídica de Puerto Rico: derecho procesal civil, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 82.

[21] Meléndez Vega v. Caribbean Intern. News, 151 DPR 649, 661 (2000).

[22] Íd.

pueden atender las mociones de descalificación cuando las mismas surgen como cuestiones colaterales en los casos pendientes ante sí.[23]

Al evaluar lo sustantivo de la procedencia de una descalificación, los tribunales deben hacer un análisis de la totalidad de las circunstancias "para valorar si la actuación del abogado constituye un "acto disruptivo" o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional".[24]

Nótese que la descalificación puede darse por orden del tribunal *motu proprio* o cuando éste accede a una solicitud de parte. Cuando la descalificación se dicta *motu proprio*, no es necesario que se aporte prueba sobre alguna infracción ética debido a que la apariencia de impropiedad podrá ser utilizada en caso de duda a favor de la descalificación. Tampoco será estrictamente necesario que el tribunal reciba prueba adicional si la descalificación responde a la necesidad del juez de agilizar el trámite de un pleito. Lo anterior responde a que en dichos casos, de ordinario, las circunstancias que motivan la descalificación han ocurrido en presencia del juez que maneja el caso. No obstante, la extensión del derecho a ser oído se cumple al darle al abogado la oportunidad de reaccionar cuando el juez que pretende

---

[23] K-Mart Corp. v. Walgreens of PR, Inc., supra, págs. 637-638.

[24] Meléndez Vega v. Caribbean Intern. News, supra, pág. 662.

descalificarlo expresa las razones sobre la procedencia de la descalificación.[25]

En cambio, cuando la descalificación la solicita la parte adversa, "la mera presentación de la moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión".[26] El tribunal deberá evaluar la totalidad de las circunstancias de acuerdo con los siguientes factores:

> (1) si quien solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos.[27]

Así, al examinar en lo sustantivo una descalificación, procede hacer un análisis de la totalidad de las circunstancias sopesando los criterios antes enumerados.[28] De igual manera, el juez que atiende una moción de descalificación presentada por la parte adversa deberá analizar si la continuación de la representación legal le causará perjuicio o desventaja indebida a quien

---

[25] Job Connection Center v. Sups. Econo, 185 DPR 585, 598-599 (2012).

[26] Íd., pág. 597.

[27] Íd., págs. 597-598. Véase, además, Liquilux Gas Corp. v. Berríos, Zaragoza, supra, págs. 864-866.

[28] Meléndez Vega v. Caribbean Intern. News, supra, pág. 66, n.4.

la solicita.[29] "[E]l tribunal deberá sopesar, además, el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente".[30] Nótese que el abogado afectado tiene derecho a ser oído y a presentar prueba a su favor.[31]

En Job Connection Center v. Sups. Econo, supra, tuvimos la oportunidad de resolver -en el contexto de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V- si las órdenes de descalificación emitidas por el foro de instancia son revisables de forma interlocutoria.[32] En ese momento resolvimos que la descalificación de un abogado conlleva repercusiones que afectan potencialmente los derechos de las partes, el trámite de los procedimientos, el derecho a libre selección de abogado y los derechos del representante legal descalificado, por lo que sí

---

[29] Job Connection Center v. Sups. Econo, supra, pág. 598.

[30] Otaño Cuevas v. Vélez Santiago, 141 DPR 820, 828 (1996).

[31] Hernández Colón, op. cit., pág. 83, citando a Otaño Cuevas v. Vélez Santiago, supra.

[32] La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V., dispone lo siguiente:

El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

procede la revisión interlocutoria.[33] Nótese que "esperar

a una apelación constituiría un fracaso irremediable de

la justicia".[34] En consecuencia allí, expresamos lo

siguiente:

> Los tribunales apelativos están llamados a
> revisar la decisión sobre la descalificación si
> se demuestra que hubo un craso abuso de
> discreción, que el foro primario actuó con
> prejuicio o parcialidad, que se equivocó en la
> interpretación o aplicación de cualquier norma
> procesal o de derecho sustantivo, y que la
> intervención en esta etapa evitará un perjuicio
> sustancial.[35]

Así, como la descalificación de un abogado afecta

negativamente varios aspectos, tales como los derechos de

las partes y el trámite de los procedimientos, no se debe

imponer ligeramente.[36] La descalificación solo procederá

cuando "sea estrictamente necesario, por considerarse un

remedio drástico que se debe evitar si existen medidas

menos onerosas que aseguren la integridad del proceso

judicial y el trato justo a las partes".[37]

De igual manera, "los organismos administrativos

cuasijudiciales tienen la facultad de dirimir mociones de

descalificación con miras a mantener el orden y control

en sus procedimientos y evitar una posible violación a

---

[33] _Job Connection Center v. Sups. Econo_, supra, págs. 600-601. Véase, además, _Torres Alvarado v. Madera Atiles_, 2019 TSPR 91, 202 DPR ___ (2019).

[34] _Job Connection Center v. Sups. Econo_, supra, pág. 601.

[35] Íd., pág. 602.

[36] Íd., págs. 596-597.

[37] Íd., pág. 597.

los Cánones de Ética Profesional".[38] Esto, toda vez que los abogados están llamados a observar los mismos principios de ética profesional tanto en los foros administrativos como en los tribunales.[39] En particular, desde 1988 este Tribunal ha establecido que "una vez el organismo administrativo resuelva el incidente sobre la descalificación, su orden está sujeta a revisión judicial".[40]

Evaluado el marco teórico, estamos en posición de decidir si las órdenes de descalificación emitidas por una agencia administrativa son revisables de forma interlocutoria.

## III

Como cuestión de umbral, debemos determinar si conforme al Art. 4.3 de la LPAU, *supra*, el Tribunal de Apelaciones tenía jurisdicción para revisar interlocutoriamente -por vía de excepción- la descalificación del licenciado Rosaly Rodríguez. En otras palabras, ¿una *Orden de descalificación de abogado* emitida por una agencia administrativa es revisable a través de las excepciones estatuidas en el precitado artículo? A la luz de nuestro racional en Job Connection

---

[38] K-Mart Corp. v. Walgreens of PR, Inc., supra, pág. 638

[39] In re: Arroyo Villamil, 113 DPR 568, 573 (1982).

[40] K-Mart Corp. v. Walgreens of PR, Inc., supra, pág. 639. Sin embargo, cuando resolvimos el citado caso no se había constituido el Tribunal de Apelaciones. Entiéndase que la moción de descalificación se presentó en el Departamento de Salud y fue revisada inicialmente por el Tribunal Superior (organismo que operaba como una especie de foro apelativo intermedio) y luego por el Tribunal Supremo.

Center v. Sups. Econo, supra, contestamos la interrogante en la afirmativa.

No podría ser de otra manera, pues los asuntos que están en juego cuando el Tribunal de Primera Instancia emite una orden de descalificación de abogado (derechos de las partes, el trámite de los procedimientos, el derecho a la libre selección de abogado y los derechos del representante legal descalificado) son los mismos que se afectarían si no permitiéramos la revisión interlocutoria de una orden de descalificación de abogado en un caso ventilado ante una agencia administrativa.

A diferencia de Job Connection Center v. Sups. Econo, supra, cuya norma fue sustentada al amparo de la Regla 52.1 de Procedimiento Civil, *supra*, la revisión interlocutoria de una orden de descalificación de abogado en la esfera administrativa se viabiliza a través del Art. 4.3 de la LPAU, *supra*.[41] Esto, en armonía con el alcance de la revisión judicial establecido en el Art. 4.5 de la LPAU, 3 LPRA sec. 9675.[42] De lo contrario, los derechos que protegimos en Job Connection Center v.

---

[41] Recientemente en AAA v. UIA, 200 DPR 903, 914 (2018) reconocimos nuevamente que:

> "[L]a doctrina de agotamiento de remedios administrativos y el requisito de finalidad pueden resultar difíciles de distinguir. De hecho, en muchos casos, los tribunales se refieren a estas doctrinas indistintamente.
>
> "Por su parte, este Tribunal ha reiterado que ambas doctrinas tienen un alcance análogo y que, de ordinario, gozan de las mismas excepciones". (Citas omitidas).

[42] En específico, el Art. 4.5 de la LPAU, 3 LPRA sec. 9675 establece lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.

Sups. Econo, supra, quedarían a la deriva si la descalificación de un abogado surgiera en la esfera administrativa. Es decir, estaríamos en un escenario en el cual la parte afectada y su representante legal estarían desprovistos de un remedio, toda vez que esperar a la determinación final de la agencia administrativa constituiría una gestión inútil, inefectiva que no ofrece un remedio adecuado. Asimismo, provocaría un daño irreparable.

Entiéndase que -si operara la limitación revisora bajo el requisito de que la revisión judicial se dará solo cuando se trate de órdenes o resoluciones finales- sería infructuoso acudir al Tribunal de Apelaciones debido a que cuando se pretende revisar una orden de descalificación de abogado es precisamente con el propósito de lograr establecer que el abogado descalificado debe continuar en el caso. Entonces, esperar hasta la determinación final de la agencia administrativa sería absurdo y por ello amerita preterir el cauce administrativo.

Así, concluimos que una *Orden de descalificación de abogado* emitida por una agencia administrativa es revisable interlocutoriamente. Superado el escollo jurisdiccional, pasamos a considerar los méritos de la descalificación.

Como mencionáramos, el peticionario argumenta que el Tribunal de Apelaciones erró al sostener la

descalificación del licenciado Rosaly Rodríguez. Luego de evaluar el expediente, es forzoso concluir que el peticionario tiene razón.

En primer lugar, destacamos que el Tribunal de Apelaciones confirmó la determinación de la ORIL tras razonar que no hubo abuso de discreción, ello sin adentrarse a evaluar el criterio medular a la hora de descalificar, a saber: cuál es la causa que dio paso a la descalificación. Esto es, qué violación a los Cánones del Código de Ética Profesional o actos disruptivos se pretende prevenir o evitar. Tampoco analizó ninguno de los factores a considerar para determinar la procedencia de la descalificación; simplemente concluyó que como el peticionario tenía 2 abogados, no se le violarían sus derechos si se descalificaba a uno de ellos. No podemos avalar dicha determinación.

Tras evaluar la *Orden de descalificación de abogado* emitida por el Oficial Examinador de la ORIL, entendemos que hubo abuso de discreción. Nótese que del propio análisis esbozado en la Resolución recurrida se desprende que no había fundamento en derecho para la procedencia de la descalificación. Entiéndase que quedó establecido que el licenciado Rosaly Rodríguez no realizó alguna acción oficial en las querellas del caso de epígrafe.

A pesar de lo anterior, el Oficial Examinador descansó en que la descalificación procedía para evitar un posible conflicto de interés relativo a una

determinación emitida por el licenciado Rosaly Rodríguez en calidad de Administrador de la ORIL en una querella previamente presentada, distinta a las que nos ocupan y que advino final y firme. Para sustentar el alegado posible conflicto de interés, el Oficial Examinador fundamentó su determinación a la luz del caso Liquilux Gas. Corp. v. Berríos, Zaragoza, 138 DPR 850 (1995). Sin embargo, en el citado caso la descalificación de abogado prosperó al concretarse una representación adversa de una corporación íntima y sus accionistas por un mismo abogado en contravención al Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX. Es evidente que dicho contexto dista de la controversia ante nuestra consideración, pues no cabe hablar de representación adversa ninguna.[43]

Es sabido que cuando la descalificación es solicitada por la parte adversa procede evaluar varios factores, pues la mera presentación de la moción de descalificación no conlleva la descalificación automática. Analizados los factores establecidos, es evidente que la ORIL tenía legitimación activa para presentar la *Moción de descalificación*. Sin embargo, no cabe hablar de la gravedad de la posible violación ética

---

[43] De igual manera, la contención de la ORIL es desacertada debido a que no cabe hablar del concepto "apariencia de impropiedad" toda vez que no existen dudas sobre ningún conflicto de interés. Recordemos que el Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, tiene como norte el deber de lealtad. En lo pertinente, busca evitar que un abogado represente a un cliente en una controversia sustancialmente relacionada a la de otro cliente actual o anterior cuando los intereses de ambos sean adversos.

involucrada, pues queda claro que no hay causa para descalificar. En cuanto a la complejidad del caso y el *expertise* del abogado, resaltamos que la práctica ante la ORIL es una altamente especializada y es precisamente por el peritaje del licenciado Rosaly Rodríguez que el peticionario le selecciona y contrata como su abogado. Con respecto a la etapa en que surgió la controversia sobre la descalificación y su efecto en la solución justa, rápida y económica del caso, a pesar de que la *Moción de descalificación* se presentó al comienzo del caso, ha incidido negativamente en la consecución del caso en los méritos. Por último, en lo relativo al propósito de la *Moción de descalificación*, nos salta a la vista que, como mencionáramos, en otro caso distinto al que nos ocupa la ORIL presentara y luego retirara una *Moción de descalificación*.

Ante la ausencia de causa para descalificar y luego de evaluar los factores establecidos a la luz de la totalidad de las circunstancias, solo resta concluir que la descalificación fue ligera y evidentemente no se sostiene en derecho.

IV

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso a la Oficina para la Reglamentación de la Industria Lechera para la continuación de los procedimientos de conformidad a lo aquí dispuesto.

Se dictará sentencia de conformidad.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oficina para la Reglamentación de la Industria Lechera<br><br>Recurrida<br><br>v.<br><br>El Farmer, Inc.<br>Licencia Núm. 3510<br><br>Peticionario<br><br>_____<br><br>Oficina para la Reglamentación de la Industria Lechera<br><br>Recurrida<br><br>v.<br><br>El Farmer, Inc.<br>Licencia Núm. 3368<br><br>Peticionario | CC-2019-198 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2020.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso a la Oficina para la Reglamentación de la Industria Lechera para la continuación de los procedimientos de conformidad a lo aquí dispuesto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretaro del Tribunal Supremo