HERIBERTO OTAÑO CUEVAS y OTROS, demandantes y recurrentes, *v.* LUIS ANTONIO VÉLEZ SANTIAGO y OTROS, demandados y recurridos.

*Número:* CC-96-75          *Resuelto:* 30 de octubre de 1996

*Víctor A. Vélez Cardona*, abogado de los peticionarios; *William Marini Román*, abogado de los recurridos.

I

PER CURIAM: El 11 de octubre de 1991, Heriberto Otaño Cuevas, su esposa Rosa Iris López Irizarry y la sociedad legal de gananciales integrada por ambos presentaron en el Tribunal de Primera Instancia, Sala Superior de Utuado, una demanda por incumplimiento de contrato y por daños y perjuicios contra Luis A. Vélez Santiago, su esposa Nereida Pérez y la sociedad de gananciales inte-

grada por éstos, Alfredo Quiñones Toledo, su esposa Celia Santana Pirichi y la sociedad de gananciales integrada por ambos. Desde el comienzo del litigio los demandantes estuvieron representados legalmente por el Lcdo. Víctor A. Vélez Cardona, y el codemandado Luis A. Vélez por los Lcdos. Neftalí Soto Santiago e Iván de Jesús Marrero. La parte codemandada Alfredo Quiñones Toledo, su esposa y la sociedad de gananciales no presentaron contestación a la demanda a pesar de haber sido emplazados debidamente mediante edictos, razón por la cual se le anotó la rebeldía.

Transcurrido alrededor de dos años de haber comenzado el litigio, el 9 de noviembre de 1993 el codemandado Alfredo Quiñones Toledo, por medio del Lcdo. Arnaldo Sánchez Recio, presentó una solicitud para que se dejara sin efecto la anotación de rebeldía. Acogida dicha solicitud por el tribunal de instancia, las partes continuaron con el descubrimiento de prueba y el foro sentenciador pautó la vista del caso en su fondo para el 3 de mayo de 1995. Cabe señalar que en ningún momento en esta etapa avanzada de los procedimientos se objetó la participación del licenciado Vélez como abogado de los demandantes en el caso.

El 29 de marzo de 1995, esto es aproximadamente un (1) mes antes de la vista, el codemandado Alfredo Quiñones, de nuevo bajo la representación legal del licenciado Sánchez Recio, solicitó la suspensión del juicio.

Sorpresivamente, ese mismo mes de marzo el licenciado Vélez Cardona, abogado de los demandantes, recibió en su oficina la visita del Lcdo. William Marini Román. Según este último le explicara, dicho abogado había sido contratado por el codemandado Quiñones con el propósito de que se uniera al licenciado Sánchez Recio en su representación legal. Una vez en la oficina, el licenciado Marini solicitó y consiguió que el licenciado Vélez le permitiera examinar su expediente del caso.

Con posterioridad a dicha visita, el licenciado Marini, en representación de su cliente, presentó en el tribunal varias mociones dirigidas a que se le permitiera asumir la representación legal del señor Quiñones y su esposa, y a que se desestimara la causa de acción contra éstos. El licenciado Marini solicitó, además, la descalificación del licenciado Vélez Cardona como representante de los demandantes. En su solicitud de descalificación, dicho abogado adujo que el licenciado Vélez Cardona fue abogado del codemandado Alfredo Quiñones para 1979–1980, por lo que supuestamente adquirió conocimiento de los negocios llevados a cabo por esta parte. Para demostrar dicha alegación, acompañó a su moción una declaración jurada suscrita por el señor Quiñones y un documento aclarativo de negocio otorgado por Quiñones y su esposa ante el licenciado Vélez Cardona el 23 de junio de 1979. El documento aclarativo, así anejado, no tenía relación alguna con los hechos del presente caso ni inmiscuía a las mismas partes.

Así las cosas el licenciado Vélez Cardona, como abogado de los demandantes, presentó a su vez una moción para solicitar la descalificación del licenciado Marini. En ella sostuvo que el licenciado Marini había abusado de su confianza al examinar y fotocopiar de su expediente ciertos documentos que incluían, entre otras cosas, las teorías legales que intentaba utilizar en el caso.

El 3 de mayo de 1995, el tribunal de instancia celebró una vista en la cual examinó las mociones de descalificación que le fueran presentadas. El licenciado Vélez Cardona no compareció a la vista señalada por encontrarse enfermo ni tampoco solicitó su suspensión en vista de que el licenciado Sánchez Recio ya había solicitado su suspensión. No obstante la incomparecencia de este abogado a la vista, el foro a quo, luego de escuchar los argumentos esbozados por el abogado contrario, descalificó al licenciado Vélez Cardona de la representación de los demandantes y denegó la descalificación del licenciado

Marini. Al resolver de esta manera, el tribunal concluyó que el mero hecho de haber sido notario en un documento aclarativo en el cual el codemandado Quiñones y su esposa fueron otorgantes hace cinco años, era razón suficiente para impedir la participación del licenciado Vélez Cardona como abogado de los demandantes en este caso y, por lo tanto, motivo de descalificación.

Oportunamente, los demandantes presentaron una moción en la cual solicitaba unas determinaciones de hechos adicionales y la reconsideración de la resolución. Denegadas ambas solicitudes, el 31 de enero de 1996 apelaron al Tribunal de Circuito de Apelaciones. Adujeron en su apelación que el tribunal de instancia erró al descalificar a su abogado luego de tres años de haber comenzado el pleito, cuando durante todo ese tiempo nadie había impugnado ni cuestionado la participación de éste en el caso.

El 29 de febrero de 1996 el Tribunal de Circuito de Apelaciones, Circuito Regional de Arecibo y Utuado, dictó una escueta resolución para denegar la expedición del auto solicitado, a pesar de reconocer que "el hecho aislado y remoto de haber el notario Lcdo. Víctor A. Vélez Cardona otorgado el Documento Aclaratorio de Negocio el 23 de julio de 1979 no es causa suficiente para su descalificación como abogado del demandante-recurrente dentro de las circunstancias de este caso". Concluyó dicho tribunal que los demandantes no cumplieron con el peso de probar que el error cometido era de carácter manifiesto. En razón de ello, presumió la corrección de los procedimientos judiciales ante instancia y decidió no intervenir con la apreciación que dicho foro realizara.

Inconforme, el 29 de marzo de 1996 los demandantes acudieron ante nos con una petición de *certiorari*. Adujeron que el tribunal apelativo erró al confirmar la descalificación de su abogado luego de tres años y medio de haber comenzado el pleito sin objeción de parte alguna y habida cuenta de que en el caso de autos se cometieron varios

errores manifiestos, tales como: (1) celebrar una vista de descalificación sin que el abogado se encuentre en sala para defenderse; (2) en una etapa procesal avanzada donde el caso está listo para verse en su fondo; (3) sin que el foro a quo emita una resolución que contenga las determinaciones de hecho y conclusiones de derecho en que fundamenta su decisión, y (4) vulnere la representación que en un día próximo pueda tener su cliente. En su recurso, los demandantes alegan, además, que el tribunal apelativo erró al no intervenir con la conducta antiética desplejada por el Lcdo. William Marini en el caso de autos.

El 19 de abril de 1996, le concedimos un término a la parte codemandada recurrida para mostrar causa por la cual no debíamos revocar la sentencia del Tribunal de Circuito de Apelaciones. Dicha parte compareció el 13 de mayo de 1996.

El 18 de julio de 1996, con el propósito de fortalecer su posición en torno a la descalificación del licenciado Vélez, el codemandado recurrido presentó una moción para someter como documentos adicionales la copia de dos escrituras otorgadas el 8 de diciembre de 1982 por los esposos Aldarondo Torres y los codemandados Alfredo Quiñones Toledo y su esposa Celia Santana Pirichi ante el notario Víctor Vélez Cardona, abogado de la parte demandante en el caso de autos. Al igual que el documento aclarativo antes presentado, estas escrituras no tenían relación alguna con los hechos particulares del caso de autos.

Con el beneficio de las comparecencias de ambas partes, nos encontramos en posición de resolver.

## II

El Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, expresamente dispone que el abogado tiene para con su cliente un deber de lealtad completa. La obligación de representar al cliente a tono con dicha leal-

tad incluye, entre otras cosas, ejercer un criterio profesional independiente y desligado de sus propios intereses y no divulgar los secretos y las confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes. *Liquilux Gas Corp. v. Berríos, Zaragoza*, 138 D.P.R. 850 (1995); *Robles Sanabria, Ex parte*, 133 D.P.R. 739 (1993). El citado Canon 21 le impone a todo abogado el deber de evitar tres situaciones básicas, a saber: (1) aceptar la representación legal cuando a su juicio ésta pueda verse afectada por sus expectativas o intereses personales; (2) aceptar la representación legal simultánea de dos clientes distintos con intereses contrapuestos, y (3) aceptar la representación de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior. *In re Toro Cubergé*, 140 D.P.R. 523 (1996).

Como reconociéramos recientemente en *In re Toro Cubergé*, supra, el primer aspecto de esta prohibición intenta evitar que un abogado deje de realizar determinada acción de posible beneficio para su cliente porque ésta frustraría algún interés propio que el abogado también quiera promover o defender. Véanse, además: *In re Belén Trujillo*, 126 D.P.R. 743 (1990); *In re Pizarro Santiago*, 117 D.P.R. 197 (1986); *In re Martínez Rivera*, 106 D.P.R. 239 (1977).

En cuanto al segundo y tercer aspecto de la prohibición, éstos tienen el firme propósito de garantizarle a todo cliente que las confidencias y los secretos que compartió con su abogado no serán utilizados en su contra, en beneficio de una representación antagónica, de un cliente simultáneo o posterior. *In re Soto*, 134 D.P.R. 772 (1993); *Robles Sanabria, Ex parte*, supra. Así, pues, un abogado queda impedido de asumir la representación simultánea o sucesiva de dos clientes, independientemente de la aprobación otorgada por éstos, cuando entre ambas representaciones exista una *relación sustancial* que implique intereses adversos. *P.R. Fuels, Inc. v. Empire Gas Co., Inc.*, 133 D.P.R. 112 (1993).

Según el criterio de la relación sustancial, el cliente sólo tiene que demostrar que la controversia legal involucrada en el pleito en la que el abogado comparece en su contra, está relacionada sustancialmente con la materia o causa de acción en la que tal abogado lo representa o le representó. El cliente no tiene que probar que ocurrió una violación al principio de confidencialidad, siendo suficiente con que demuestre la existencia de una relación previa de abogado y cliente, la relación sustancial vigente entre ambas representaciones conflictivas y el efecto adverso que surge de la representación dual de ellas. *P.R. Fuel, Inc. v. Empire Gas Co., Inc.*, supra; *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984).

A pesar de lo antes mencionado, también hemos reconocido que nada existe en el referido Canon 21 que vede la representación sucesiva o simultánea de dos clientes por su abogado ante la total ausencia de un posible conflicto de intereses entre ambas representaciones. *Liquilux Gas Corp. v. Berríos, Zaragoza*, supra. Así, por ejemplo, en *Santiago v. Echegaray*, 137 D.P.R. 1010 (1995), permitimos que un abogado asumiera la representación legal de una parte luego de haber autenticado su firma en la contestación al interrogatorio que le sometiera con anterioridad la parte contraria. Allí establecimos que por tratarse de una declaración de autenticidad de firma en la que el notario no asume responsabilidad por el contenido del documento, no existía el peligro de dar la falsa impresión de que el abogado-notario siempre estuvo parcializado a favor de una parte ni de que estaba exigiendo la contraprestación del documento que él mismo autorizó. Asimismo, en *Fed. Pesc. Playa Picúas v. U.S. Inds., Inc.*, 135 D.P.R. 303 (1994), establecimos que un notario puede representar con posterioridad a uno de los otorgantes si, en el pleito contencioso al cual comparece, todas las partes otorgantes se encuentran en el mismo lado.

El tribunal *motu proprio* puede otorgar la des-

calificación de un abogado en aquellos casos en los cuales éste asume la representación de ambos clientes a pesar de la existencia de un posible conflicto. En tales casos no resulta necesario que se aporte prueba sobre una violación ética, ya que la mera apariencia de impropiedad podrá ser utilizada, en caso de duda, en favor de la descalificación. *Liquilux Gas Corp. v. Berríos, Zaragoza*, supra; *In re Carreras Rovira y Suárez Zayas*, supra. En las situaciones en que sea la parte contraria quien solicite la descalificación, el tribunal deberá considerar si quien solicita la descalificación tiene legitimación activa para invocarla, la gravedad del conflicto de interés implicado, la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados involucrados, la etapa de los procedimientos en que surja la controversia sobre la descalificación y su posible efecto en cuanto a la resolución justa, rápida y económica del caso, y el propósito detrás de la descalificación, es decir, si la moción de descalificación está siendo utilizada como mecanismo procesal para dilatar los procedimientos. *Liquilux Gas Corp. v. Berríos, Zaragoza*, supra. Al considerar esta serie de factores, el tribunal deberá sopesar, además, el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente. *Sánchez Acevedo v. E.L.A.*, 125 D.P.R. 432, 438 (1990); *In re Vélez*, 103 D.P.R. 590, 599 (1975). De igual forma, el tribunal velará por que el abogado que deberá ser descalificado tenga al menos la oportunidad de ser oído y poder presentar prueba en su defensa. *In re González Blanes*, 65 D.P.R. 381 (1945).

## III

Al aplicar la normativa antes expuesta, sólo podemos concluir que la prueba presentada en el caso de autos no era suficiente para justificar la descalificación del licenciado Vélez Cardona como abogado de la parte deman-

dante. Como bien señalara el propio tribunal apelativo, el mero hecho de autorizar hace cinco años unos documentos en los cuales uno de los otorgantes resulta ser parte codemandada en el presente caso de autos, no es óbice para impedir todo tipo de representación sucesiva en su contra por parte del mismo abogado-notario. Resultaba necesario que la parte que alegó el conflicto de intereses demostrara la relación sustancial existente entre la representación anterior y la presente, cosa que no sucedió en este caso. Por el contrario, un simple examen de los documentos autorizados por el licenciado Vélez y anejados por el codemandante a su moción de descalificación refleja que la autorización de ellos por sí solo no era suficiente para que éste obtuviese información confidencial de los negocios del codemandado Quiñones ni mucho menos sobre los hechos que dieron motivo al caso de autos.

Nótese que para el foro apelativo era fácil constatar que el tribunal de instancia ni siquiera llevó a cabo un balance entre el supuesto conflicto de intereses que al final no fue probado y el perjuicio que sería causado por dicha descalificación, tal como lo requiriéramos en el citado caso *Liquilux Gas Corp. v. Berríos, Zaragoza*. La etapa avanzada en que se encontraban los procedimientos, el hecho de que durante todo ese tiempo no se hubiese objetado la representación de los demandantes, el detrimental efecto a la solución expedita del caso y el haber dejado desprovisto al cliente del abogado que escogiera, sin duda alguna eran factores que se debían considerar y que inclinaban la balanza en contra de la descalificación del licenciado Vélez. El error cometido por el foro a quo al obviar esta serie de factores no podía ser más manifiesto y así lo debió reconocer el tribunal apelativo. Ciertamente, dicho foro erró al darle deferencia a una determinación de instancia que, a todas luces, no estaba sostenida por la prueba.

Ahora bien, así como no procedía la descalificación del licenciado Vélez Cardona tampoco procedía la del Lcdo.

William Marini. La escueta discusión en torno a este señalamiento realizada por los demandantes sólo demuestra que el licenciado Vélez Cardona le permitió examinar al licenciado Marini el expediente. Los demandantes no señalan en específico los documentos que alegadamente fotocopió el licenciado Marini sin su permiso, lo cual hace imposible determinar si se trataba de documentos públicos o de documentos confidenciales que fueran producto del trabajo del abogado. Ante tales circunstancias, entendemos que no se probó la existencia de causa justificada alguna que ameritara la descalificación del licenciado Marini.

Por los fundamentos anteriormente expuestos, *se expide el auto de "certiorari" y se modifica la resolución dictada por el Tribunal de Circuito de Apelaciones el 29 de febrero de 1996, con el propósito de revocar la descalificación del Lcdo. Víctor A. Vélez Cardona. Así modificada, se confirman los demás aspectos y se devuelve el caso al tribunal de instancia para la confirmación de los procedimientos.*

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señores Negrón García y Hernández Denton concurrieron sin opinión escrita.