Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| EL PUEBLO DE PUERTO RICO<br><br>*Peticionario*<br><br>v.<br><br>Luis A. Espinet García<br><br>*Recurrido* | KLCE202401044 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>K VP2024-1936 y otros<br><br>Sobre:<br>Art. 209 del CP y otros |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 2 de octubre de 2024.

Comparece ante nos el Pueblo de Puerto Rico, representado por la Oficina del Procurador General (Ministerio Público, parte peticionaria o OPG) mediante *Petición de Certiorari* y *Solicitud en Auxilio de Jurisdicción* presentadas el 26 de septiembre de 2024. En su recurso, la parte peticionaria solicita la revisión y revocación de la *Resolución* emitida y notificada el 28 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró no ha lugar una *Solicitud de Descalificación del Abogado de Defensa por Razón de Potencial Conflicto de Intereses* presentada por la parte peticionaria.

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *Certiorari Criminal* solicitado, **confirmamos** la *Resolución y Orden* recurrida y declaramos **no ha lugar** la *Solicitud en Auxilio de Jurisdicción.*

Número Identificador

SEN2024_____

**I.**

Conforme surge del expediente ante nuestra consideración, el Ministerio Público sometió cuarenta y cuatro (44) cargos contra el señor Luis Espinet García (señor Espinet García o recurrido), los cuales se desglosan como sigue: doce (12) cargos por infracción al Artículo 209 del Código Penal, Apropiación Ilegal de Identidad; dieciséis (16) cargos bajo Artículo 182 del Código Penal, Apropiación Ilegal de Fondos Públicos; y dieciséis (16) cargos bajo el Art. 3.07.1 de la Ley 154, por someter reclamaciones falsas al Programa de Medicaid y cobrar tarifas en exceso a beneficiarios. El 24 de junio de 2024, se celebró la vista de causa para arresto en la cual se determinó causa.

Con relación a la controversia que esta ante nuestra consideración, el Ministerio Público presentó el 26 de junio de 2024 una *Solicitud de Descalificación del Abogado de Defensa por Razón de Potencial Conflicto de Intereses*[1]. En síntesis, adujo que el representante legal del señor Espinet García, el Lcdo. Michael Corona Muñoz (Lcdo. Corona Muñoz), tuvo acceso y conoció cuál era la prueba requerida en la Orden de Allanamiento que fue diligenciada el 10 de abril de 2024. Además, indicó que, durante la ejecución de la Orden de Allanamiento, la señora Amary Rivera Rodríguez (secretaria o señora Rivera Rodríguez), secretaria del señor Espinet García, recibió instrucciones del Lcdo. Corona Muñoz para que no colaborara con la entrega de veintinueve (29) expedientes solicitados por el Ministerio Público. También, la parte peticionaria alegó que, la intervención del Lcdo. Corona Muñoz durante el diligenciamiento de la orden de allanamiento ha creado un conflicto de interés por representación sucesiva, lo que inhabilita

---

[1] Anejo VI del recurso de *Certiorari*.

al Lcdo. Corona Muñoz para continuar la representación legal del señor Espinet García.

Por su parte, el 3 de julio de 2024, el recurrido presentó *Moción en Oposición a Moción de Descalificación de Abogado de Defensa*[2], esbozó que es prueba de referencia el haber escuchado la llamada telefónica en la cual se alega que se orienta a la señora Rivera Rodríguez. Además, adujo que el Lcdo. Corona Muñoz nunca ha sido representante legal de la secretaria ni le ha brindado consejo legal. Añadió que, la fiscal no argumentó el alegado conflicto de interés durante la vista de determinación de causa para arresto, el cual entiende era el momento propicio para hacerlo.

Evaluadas las mociones presentadas por ambas partes, el 26 de agosto de 2024, el TPI celebró una *Vista* para atender el petitorio del Ministerio Público. En dicha vista, el Ministerio Público presentó los testimonios del agente Pablo Rodríguez Ocasio, supervisor de la unidad de fraude de Medicaid y el de Gricel García Gregory, agente a cargo de la investigación. Ambos fueron contrainterrogados por la defensa del señor Espinet García.

En virtud de lo anterior, el 28 de agosto de 2024, notificada ese mismo día, el TPI emitió *Resolución y Orden*[3] en la cual concluyó lo siguiente:

> El Ministerio Público al solicitar la descalificación del Lcdo. Corona tiene el peso de la prueba para demostrar las razones por las cuales procede su solicitud. El Pueblo tuvo la oportunidad de presentar evidencia al Tribunal a través de la Sra. Rivera de cada una las alegaciones hechas, así como los registros de las llamadas hechas y recibidas por su testigo. Teniendo la "mejor prueba", decidieron presentar los testimonios de dos agentes a los cuales no les consta de personal y propio conocimiento los partícipes de las llamadas ni el contenido de las conversaciones. Las manifestaciones que hacen los agentes sobre las supuestas instrucciones recibidas pudieron ser fácilmente corroboradas y aclaradas por la Sra. Rivera.
> De los testimonios presentados no surge prueba alguna de que el Lcdo. Corona es abogado de la Sra. Rivera, que ofreció asesoramiento legal ni que tuvo acceso de antemano a evidencia que sería utilizada en contra de su cliente.
> [...]

---

[2] Anejo VII del recurso de *Certiorari.*
[3] Anejo I del recurso de *Certiorari.*

En desacuerdo con la determinación, el 29 de agosto de 2024, el Ministerio Público presentó una *Reconsideración Solicitud de Descalificación del Abogado de Defensa por Razón de Potencial Conflicto de Intereses*[4]. En esencia, reiteró que la secretaria, en varias ocasiones, había hablado con el Lcdo. Corona Muñoz sobre la Orden de Allanamiento y que este le instruyó como debía actuar y qué decir durante el diligenciamiento de la orden. Insistió que esta conducta desplegada por el representante legal del señor Espinet García durante el diligenciamiento de la Orden de Allanamiento ha provocado un potencial conflicto legal-ético, por lo cual, solicitó que el TPI reconsiderara su determinación.

El 10 de septiembre de 2024, el TPI emitió una *Resolución*[5], mediante la cual declaró no ha lugar la moción de reconsideración.

Inconforme aún, el 26 de septiembre de 2024, el Ministerio Público acudió ante nos mediante el recurso de epígrafe, en el cual señaló al TPI la comisión del siguiente error:

> El Tribunal de Primera Instancia erró en derecho y abusó de su discreción al no descalificar al Lcdo. Michael Corona Muñoz como representante legal del Sr. Luis A. Espinet García, a pesar de haber formado, previamente, una relación de abogado-cliente con la Sra. Amary Rivera Rodríguez al momento del diligenciamiento de la Orden de Registro y Allanamiento contra la oficina médica del recurrido. Dicha representación estuvo sustancialmente relacionada con la representación actual del señor Espinet García, y esta última resulta advera a los intereses de la señora Rivera Rodríguez.

Asimismo, el peticionario acompañó su petición de *Certiorari Criminal* con una *Solicitud en Auxilio de Jurisdicción,* mediante la cual solicitó la paralización de los procedimientos ante el TPI, debido a que el 3 de octubre de 2024 a la 1:30 pm, está pautada la continuación de la vista preliminar.

---

[4] Anejo II del recurso de *Certiorari*
[5] Anejo III del recurso de *Certiorari*

El 27 de septiembre de 2024, emitimos una *Resolución* en la que concedimos término al recurrido para expresar su posición.

El 1 de octubre de 2024, el recurrido presentó *Moción en Oposición a Paralización de la Vista Preliminar que est[á] en Curso y en Solicitud de Desestimación del Certiorari.*

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver el recurso ante nuestra consideración.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[6]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[7]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[8]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[9].

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones[10], señala los criterios que para ello debemos considerar. Éstos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

---

[6] Véase *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).
[7] *Íd.*
[8] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra*, pág. 91.
[9] *Íd.*
[10] 4 LPRA XXII-B, R. 40.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

El Canon 21 del Código de Ética Profesional[11], dispone que el abogado tiene para con su cliente un deber de lealtad completa, la cual de divide en dos (2) aspectos: (1) ejercer un criterio profesional independiente y desligado de sus propios intereses, y (2) no divulgar los secretos y confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes[12]. El deber de lealtad completa que tiene todo abogado para con su cliente, que consiste en el deber de no revelar confidencias que su cliente haya compartido, prohíbe que un abogado incurra en una representación simultánea o sucesiva adversa[13]. Ahora bien, lo anterior no quiere decir que un abogado no pueda representar simultánea o sucesivamente a dos (2) clientes en asuntos similares[14]. La norma es que un abogado no puede representar a un

---

[11] 4 LPRA Ap. IX.
[12] *Liquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850, 857-858 (1995).
[13] *Íd.*, págs. 858-859.
[14] *Íd.*, pág. 59.

cliente en una controversia que esté sustancialmente relacionada a la de otro cliente actual o anterior cuando los intereses de ambos sean adversos[15].

Así, un abogado está impedido de asumir la representación simultánea o sucesiva de dos clientes, independientemente de la aprobación otorgada por estos, cuando entre ambas representaciones exista una relación sustancial que implique intereses adversos[16]. Respecto al criterio de la relación sustancial, el cliente tiene que demostrar que la controversia legal involucrada en el pleito en la que el abogado comparece en su contra está relacionada sustancialmente con la materia o causa de acción en la que tal abogado lo representa o lo representó[17]. En esos casos, el cliente no tiene que probar la existencia de una violación al principio de confidencialidad, pues es suficiente que demuestre la existencia de una relación previa de abogado y cliente, la relación sustancial vigente entre ambas representaciones conflictivas y el efecto adverso que surge de la representación dual de ellas[18].

La Regla 9.3 de Procedimiento Civil, *supra*, establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los miembros de la profesión legal que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. Cónsono con lo anterior, el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello aporte a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de

---

[15] *Íd.*, citando a *Developments in the Law: Conflicts of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244, 1295-1296 (1981).
[16] *Otaño v. Vélez*, 141 DPR 820, 826 (1996).
[17] *Íd.,* pág. 827.
[18] *Íd.*

los pleitos[19]. Así, una orden de descalificación puede proceder, ya sea para prevenir violaciones al Código de Ética Profesional o para evitar conductas disruptivas de los abogados o abogadas durante el trámite de un pleito. Íd. Ahora bien, la descalificación se considera un remedio drástico que se debe evitar ante la existencia de remedios menos onerosos que aseguren la integridad del proceso judicial y el trato justo de las partes[20]. Por tal razón, los tribunales deben realizar un balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial[21].

Una descalificación puede ser ordenada *motu proprio* por el tribunal o, puede ser solicitada, por una parte[22]. En los casos en que el tribunal ordene la descalificación *motu proprio* no es necesario que aporte prueba sobre una violación ética, ya que la apariencia de impropiedad justifica la descalificación[23]. Por otro lado, cuando es una parte la que solicita la descalificación de un representante legal, la mera presentación de la solicitud no conlleva la concesión automática de la petición[24]. En estos casos, el tribunal deberá hacer un análisis de la totalidad de las circunstancias de acuerdo con los siguientes factores:

**(i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el "expertise" de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto**

---

[19] *ORIL v. El Farmer Inc.*, 204 DPR 229, 241 (2020); *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012); *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 660 (2000).
[20] *Job Connection Center v. Sups. Econo, supra* pág. 597.
[21] *Íd.*
[22] *Meléndez v. Caribbean Int'l. News, supra*, pág. 661.
[23] *Íd.*
[24] *Job Connection Center v. Sups. Econo, supra*, pág. 597.

**a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción está siendo utilizada como mecanismo para dilatar los procedimientos**[25].

Asimismo, el juez que atiende una moción de descalificación debe analizar si la continuación de la representación legal le causaría un perjuicio o desventaja indebida a el caso a quien lo solicita[26]. Además, el tribunal debe sopesar el derecho que le asiste a todo ciudadano de escoger con libertad su representación legal[27].

### III.

Las circunstancias particulares de este caso justifican que ejerzamos nuestra discreción y expidamos el recurso para confirmar al TPI. A nuestro juicio, nuestra intervención es oportuna y adecuada. Veamos.

En el presente recurso, el Ministerio Público solicita la revisión de la determinación del TPI, mediante la cual deniega su *Solicitud de Descalificación del Abogado de Defensa por Razón de Potencial Conflicto de Intereses*. En síntesis, alega que el TPI abusó de su discreción al dictaminar incorrectamente que el Ministerio Público no probó que el Lcdo. Corona Muñoz ofreció asesoramiento legal y tuvo acceso de antemano a la evidencia que sería utilizada en contra del señor Espinet García. Aduce que los testimonios de los dos agentes demostraron la intervención y asesoramiento indebido del Lcdo. Corona Muñoz. Por lo tanto, razona que, la prueba desfilada a través de los testimonios es suficiente para demostrar que la actuación del Lcdo. Corona Muñoz es contraria a lo exigido en el Código de Ética Profesional. Asevera que el agente Rodríguez Ocasio testificó que el día del diligenciamiento de la orden de registro

---

[25] *Íd.*
[26] *Íd.*, pág. 598.
[27] *Otaño v. Vélez, supra,* pág. 828.

y allanamiento entró a la oficina del recurrido; que al ver a la señora Rivera Rodríguez llegar, la orientó de la orden y le explicó que estaba en búsqueda de veintinueve (29) expedientes; que así mismo el agente Rodríguez Ocasio pidió asistencia a la señora Rivera Rodríguez, a lo que esta hizo una llamada y, 4 minutos después, la señora Rivera Rodríguez recibió una llamada y repentinamente le indicó que no les iba a ayudar y que tampoco iba a contestar preguntas; además, indicó que la señora Rivera Rodríguez le comunicó al agente Rodríguez Ocasio que no iba a cooperar ni contestar preguntas porque el Lcdo. Corona Muñoz la orientó al respecto. Esto surge del Informe de Diligenciamiento de Orden de Allanamiento suscrito por el agente Rodríguez Ocasio.

Por otro lado, añade que, del testimonio de la agente García Gregory surge que fue ella quien diligenció la orden de registro y allanamiento; que la señora Rivera Rodríguez abrió la oficina e indicó ser la secretaria y asistente dental del recurrido; que le preguntó por el señor Espinet García y que le informó la señora Rivera Rodríguez que él no se encontraba en el sitio; que la señora Rivera Rodríguez llamó al recurrido; que los siete (7) minutos de terminada esa conversación, la señora Rivera Rodríguez recibió una llamada y que de ahí en adelante no quiso hablar; además, le expresó que esto lo hacía por instrucciones del Lcdo. Corona Muñoz. Por tanto, el Ministerio Público sostiene que procede la descalificación del Lcdo. Corona Muñoz.

De igual forma y en oposición, el recurrido reitera que, el foro primario atendió la solicitud de descalificación por medio de una vista evidenciaria. Cónsono con ello, alega que el Ministerio Público optó por presentar prueba testifical insuficiente para demostrar el alegado asesoramiento del Lcdo. Corona Muñoz. De conformidad con lo anterior, el recurrido se reafirma en que la petición es frívola y carente de fundamentos legales.

Nuestro Tribunal Supremo dispuso que, al evaluar una moción de descalificación, el foro primario habrá de hacer un análisis de la totalidad de las circunstancias y verificar si se cumplen con los factores reseñados en la jurisprudencia[28]. Al repasar los factores exigidos por nuestra Alta Curia razonamos que el Ministerio Público incumplió con probar la posible violación ética involucrada. En ese sentido, nos resulta correcto el análisis esbozado por el foro primario, al determinar que, el Ministerio Público *tiene el peso de la prueba para demostrar las razones por las cuales procede su solicitud.* Que el *Pueblo tuvo la oportunidad de presentar evidencia al Tribunal a través de la Sra. Rivera de cada una las alegaciones hechas, así como los registros de las llamadas hechas y recibidas por su testigo. Teniendo la "mejor prueba", decidieron presentar los testimonios de dos agentes a los cuales no les consta de personal y propio conocimiento los partícipes de las llamadas ni el contenido de las conversaciones*[29].

Insistimos que, el Ministerio Público no logró articular ni establecer con prueba fehaciente, ya sea testifical o documental, la conducta imputada al Lcdo. Corona Muñoz. Así pues, analizado el expediente apelativo, y al examinar el proceder del foro primario, no identificamos que se haya excedido en el ejercicio de su discreción, actuado de manera arbitraria o errado en la aplicación del derecho.

En consecuencia, expedimos el auto de *Certiorari,* confirmamos la determinación del foro primario y declaramos no ha lugar la *Solicitud en Auxilio de Jurisdicción.*

---

[28] *Job Connection Center v. Sups. Econo, supra,* págs. 597-598 y *Otaño v. Vélez, supra,* pág. 829.
[29] Véase *Resolución y Orden,* anejo 2 del recurso.

**IV.**

Por los fundamentos que anteceden, **expedimos** el auto de *Certiorari Criminal* solicitado, **confirmamos** la determinación del foro primario y declaramos **no ha lugar** la *Solicitud en Auxilio de Jurisdicción.* Consecuentemente, devolvemos el caso al TPI para la continuación de la vista preliminar. A tenor con lo dispuesto en la Regla 35 (A) (1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 35 (A)(1), el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto sin tener que esperar por nuestro mandato.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El juez Adames Soto concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones