ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| KIMBERLY LOZADA, ET AL.  Parte Recurrida  v.  AURORITA RESTAURANTE MEXICANO, INC.; ET AL.  Parte Peticionaria | KLCE202500398 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Sala: 801  Caso Núm.: SJ2024CV05255  Sobre:  Daños y Perjuicios, Pleito de Clase |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparecieron ante este Tribunal la parte peticionaria, Aurorita Restaurant Mexicano, Inc. y Universal Insurance Company (en adelante, "Aurorita", "Universal" y/o los "Peticionarios"), mediante recurso de *Certiorari* presentado el 14 de abril de 2025. Nos solicitaron la revocación de la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 5 de febrero de 2025, mediante la cual declaró "No Ha Lugar" una "**Solicitud de Orden para Mostrar Causa**" presentada por los Peticionarios.

Por los fundamentos que expondremos a continuación, se *deniega* la expedición del auto de *certiorari* ante nos.

**I.**

El 11 de junio de 2024, la Sra. Kimberly Lozada, por sí y en representación de la Clase A (en adelante, la "señora Lozada" o los "Recurridos"), presentó una "**Demanda**" sobre daños y perjuicios, así como una solicitud de certificación de pleito de clase en contra de los Peticionarios. Posteriormente, los Recurridos presentaron una "**Demanda Enmendada**" el 23 de julio de 2024. Alegaron que Aurorita fue responsable de haber ocasionado un brote de bacterias por

Número Identificador:
RES2025_____

microorganismos infecciosos, por el cual los Recurridos sufrieron daños al presentar diferentes síntomas. Sostuvieron que el Peticionario tenía el deber de mantener, almacenar y procesar los alimentos y el hielo para el consumo de sus clientes en condiciones aptas y salubres, evitando la contaminación de los mismos, así como la obligación de suministrar a sus clientes alimentos y bebidas aptas para el consumo humano, a fin de protegerlos del riesgo previsible de una intoxicación o un envenenamiento causado por alimentos o bebidas contaminadas con microorganismos infecciosos. Con respecto a Universal, alegaron que ésta es responsable bajo una póliza de responsabilidad pública emitida a favor de Aurorita. De igual manera, solicitaron que el litigio se certificara como un pleito de clase. En vista de lo anterior, solicitaron el pago por concepto de los daños y perjuicios sufridos y el pago de honorarios de abogados, costas, gastos y los intereses legales desde la ocurrencia del daño.

El 12 de agosto de 2024, los Peticionarios presentaron "**Contestación a Demanda Enmendada**", mediante la cual negaron las aseveraciones incorporadas por los Recurridos en la "**Demanda Enmendada**". Del mismo modo, alegaron afirmativamente que el Departamento de Salud llevó a cabo una investigación del restaurante, a raíz de que el 16 de abril de 2024 recibieron una notificación sobre personas que presentaron síntomas gastrointestinales luego de consumir alimentos en dicho establecimiento. Asimismo, sostuvo que se acogió a un cierre voluntario hasta tanto culminara el proceso de investigación del Departamento de Salud y se tomaran cualesquiera medidas necesarias para salvaguardar la salud y el bienestar de todos los clientes y el personal del restaurante.

El 6 de diciembre de 2024, los Recurridos presentaron una "**Solicitud de Permiso para Presentar Segunda Demanda Enmendada**", en la que peticionaron permiso al TPI para incluir como demandantes a la Sra. Nicole Rodríguez, por sí y en representación de los menores BR y JR. En esa misma fecha, el TPI emitió una *Orden* en la que denegó la referida moción y expresó a los Recurridos que debían radicar una demanda independiente y luego solicitar la

consolidación, pues "permitir enmiendas a demandas para añadir terceros no relacionados a los originales omite la obligación de cancelar sellos".[1]

En concordancia con lo anterior, el 17 de diciembre de 2024, por conducto de la representación legal de los Recurridos, las Sras. Nicole Rodríguez y Valerie Rodríguez, esta última en representación de los menores BR y JR, presentaron una "**Demanda**" de daños y perjuicios en el caso núm. SJ2024CV11536. En esencia, plantearon haber sufrido una sintomatología análoga a la presuntamente sufrida por los Recurridos, luego del consumo de alimentos en el restaurante. Posteriormente, la misma fue enmendada en dos ocasiones.

Así las cosas, el 9 de enero de 2025, los Recurridos solicitaron la consolidación de ambos pleitos. No obstante, el TPI emitió Orden mediante la cual declaró "No Ha Lugar" la solicitud a esa etapa de los procedimientos. Particularmente, señaló que "si en su momento se certifica el pleito de epígrafe como uno de clase se emitirá la orden correspondiente".[2] Así las cosas, los Peticionarios presentaron una "**Moción en Solicitud de Orden para Mostrar Causa**", mediante la cual peticionaron al TPI que emitiera una orden para que requiriera a la representación legal de los Recurridos a que mostrara causa por la cual no debían ser descalificados o, en su defecto, que se deniegue de plano la certificación de la clase por incumplimiento con el requisito esencial de adecuada y justa representación. En la referida moción, los Peticionarios alegaron que tras la presentación del segundo pleito "la representación simultánea de dos clases putativas contra los mismos demandados genera un conflicto de intereses incompatible con los deberes ético-profesionales de los abogados de la parte demandante".[3]

El 5 de febrero de 2025, los Recurridos presentaron una "**Oposición a Moción en Solicitud de Orden para Mostrar Causa**". Expresaron que una lectura de la "**Segunda Demanda Enmendada**" presentada en el caso núm. SJ2024CV11536 conducía a la conclusión de que la misma no se presentó como una acción de clase y que la solicitud de dicho remedio en el apartado de la súplica se debió a un error clerical. En esa misma fecha, el TPI emitió *Resolución*

---

[1] *Véase*, <u>Apéndice del recurso de *certiorari*</u>, pág. 50.
[2] *Véase*, <u>Apéndice del recurso de *certiorari*</u>, pág. 55.
[3] *Véase*, <u>Apéndice del recurso de *certiorari*</u>, pág. 58.

mediante la cual denegó la solicitud de orden presentada por los Peticionarios. En el referido dictamen, el TPI concluyó que los Recurridos subrayaron bajo su firma y obligación ética que la referencia a una segunda solicitud de certificación de pleito de clase en el segundo caso fue un error de transcripción. Asimismo, enfatizó en que independiente de los méritos de lo anterior, no existían intereses encontrados entre los demandantes de ambos pleitos. De hecho, sostuvo que nada impedía que el Tribunal certificara a más de un demandante como persona en representación de una clase. Además, sostuvo que los Peticionarios no eran la parte afectada por las acciones que pudieran surgir de la representación simultánea e hizo hincapié en la etapa de los procedimientos en que se encontraba el caso, pues se atrasaría considerablemente la resolución justa, rápida y económica del litigio.

Luego de la presentación de una "**Moción de Reconsideración**", el foro recurrido emitió *Orden* denegando dicha solicitud. Insatisfechos, los Peticionarios presentaron el recurso que nos ocupa mediante el cual le imputaron al TPI la comisión del siguiente error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL PERMITIR QUE CONTINUARA LA REPRESENTACIÓN LEGAL DE LA PARTE DEMANDANTE ANTE EL CONFLICTO DE INTERESES Y APARIENCIA DE CONDUCTA IMPROPIA DE SUS ABOGADOS.**

El 24 de abril de 2025, los Recurridos presentaron "**Oposición a la Expedición de Auto de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021). La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. Rivera *et al.* v. Arcos Dorados *et al.*, 212 DPR 194, 207 (2023). Así, este solo se expedirá luego de justipreciar los criterios establecidos en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, y en aquellas instancias específicas que

delimita la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de desempeñar prudentemente nuestra facultad discrecional, es imprescindible acudir a lo que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). La norma antes citada adquiere mayor importancia en aquellas situaciones donde los medios alternativos de revisión de determinaciones no están disponibles. Íd. Por ello, la referida Regla indica que los criterios que se deben evaluar son los siguientes:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

A diferencia del recurso de apelación, el auto de *certiorari*, por ser este uno discrecional, debe emplearse con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). Con relación a esto, el Tribunal Supremo de

Puerto Rico ha señalado en numerosas ocasiones que, en definición, el concepto de *discreción* significa tener poder para decidir en una u otra forma. Es decir, escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). El concepto de *discreción* también ha sido definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. Dicho de otro modo, el ejercicio apropiado de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). De esta manera, un foro apelativo no se interpondrá en las decisiones del foro sentenciador, a menos que dichas decisiones sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

La Regla 9.3 de las de Procedimiento Civil establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. 32 LPRA Ap. V, R. 9.3. Conforme a esto, el Tribunal de Primera Instancia puede ordenar la descalificación de un abogado cuando ello abone a la marcha apropiada de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos. Meléndez v. Caribbean Int'l. News, 151 DPR 649, 661 (2000).

El Tribunal Supremo de Puerto Rico ha determinado que "los procedimientos de descalificación de abogados no constituyen de por sí acciones disciplinarias sujetas a la jurisdicción exclusiva del Tribunal Supremo". Liquilux Gas v. Berrios, 138 DPR 850, 864 (1995); K-Mart Corp v. Walgreens de PR, Inc., 121 DPR 633, 637-638 (1988). Además, nuestro estado de derecho vigente establece que la descalificación "es una medida preventiva para evitar posibles infracciones a los Cánones de Ética Profesional … [y] funge como un 'mecanismo para asegurar la adecuada marcha de un litigio evitando los actos disruptivos provenientes del abogado'". ORIL v. El Farmer, Inc., 204 DPR 229, 241 (2020) (*citando a* R. Hernández Colón, Práctica Jurídica de Puerto Rico: derecho

procesal civil, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 82); K-Mart Corp v. Walgreens de PR, Inc., *supra*, pág. 637. Específicamente, "la descalificación puede otorgarse con el fin de: (1) prevenir una violación a cualquiera de los Cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados durante el trámite de un pleito". ORIL v. El Farmer, Inc., *supra*, pág. 241.

El Tribunal Supremo ha resuelto que "[a]l evaluar lo sustantivo de la procedencia de una descalificación, los tribunales deben hacer un análisis de la totalidad de las circunstancias 'para valorar si la actuación del abogado constituye un 'acto disruptivo' o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional'". ORIL v. El Farmer, Inc., *supra*, pág. 242; Meléndez Vega v. Caribbean Intern News, *supra*, pág. 662. El Tribunal debe analizar los siguientes factores:

> (1) si quien solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. ORIL v. El Farmer, Inc., *supra*, págs. 242-234; *véase, además,* Job Connection Center v. Sups. Econo, 185 DPR 585, 597-598 (2012); Liquilux Gas v. Berrios, *supra*, págs. 864-866.

Asimismo, el juez que considera una moción de descalificación que ha sido presentada por la parte contraria, deberá analizar si el hecho de que continúe la representación legal le ocasionará algún perjuicio o desventaja indebida a quien la solicita. Job Connection Center v. Sups. Econo, *supra*, pág. 598. De igual forma, es importante y necesario que se tome en cuenta el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente. ORIL v. El Farmer, Inc., *supra*, pág. 242.

Por eso, es indispensable asegurar que "el abogado a ser descalificado tenga al menos la oportunidad de ser oído, pudiendo presentar prueba en su defensa". Otaño v. Vélez, 141 DPR 820, 828 (1996) (*Per Curiam*). Esto es parte de las protecciones constitucionales que nuestro ordenamiento jurídico le

garantiza a todos los ciudadanos. Job Connection Center v. Sups. Econo, *supra*, pág. 598. Lo antes expresado está basado en que el remedio de la descalificación no debe imponerse de manera apresurada y su examinación debe estar guiada por un análisis detenido y minucioso de todas las circunstancias que rodean la controversia. Íd., pág. 597. Es decir, solo debe proceder cuando sea estrictamente necesario, por considerarse un remedio drástico que debe ser evitado si existen medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes. Íd.

**C.**

El Canon 21 del Código de Ética Profesional dispone, en lo pertinente, lo siguiente:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste. 4 LPRA Ap. IX, C. 21.

El Tribunal Supremo ha señalado que el conflicto de intereses regulado por el Canon 21 establece tres circunstancias que deben ser evitadas por todo abogado: (1) en primer lugar, que en beneficio de un cliente, abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones para con otro cliente; (2) que un abogado acepte la representación legal de un cliente en asuntos que puedan afectar adversamente cualquier interés de un cliente anterior; y (3) que un abogado acepte una representación legal, o que continúe representando a su cliente, cuando su juicio profesional pueda verse afectado por sus intereses personales. *In re* Santiago Ríos, 172 DPR 802, 813-814 (2007). La norma antes

discutida ha sido establecida para "evitar una conducta profesional que mine el principio cardinal de confianza en que debe fundamentarse toda relación fiduciaria entre un abogado y su cliente". Íd., pág. 814.

En resumen, "el conflicto de intereses proscrito por el Canon 21 comprende tanto el conflicto de intereses personales como el conflicto de obligaciones". *In re* Santiago Ríos, *supra*, pág. 815. Como vemos, "[l]a primera vertiente sostiene que el conflicto existe cuando los intereses personales del abogado interfieren con la representación adecuada y efectiva del cliente, al ser éstos incompatibles, dificultando de este modo el deber de lealtad hacia su cliente". Íd. Mientras que, en la segunda acepción, "el conflicto de obligaciones existe cuando las representaciones simultáneas o sucesivas están en conflicto con su deber de guardar confidencias que ostenta el abogado con cada uno de sus clientes". Íd.

Es menester puntualizar que, con respecto a lo antes esbozado, el Tribunal Supremo de Puerto Rico ha señalado que "[e]s deber de todo abogado cerciorarse de que no represente intereses encontrados o incompatibles entre sí. Además, el abogado tiene que cuidarse de que sus actuaciones no den margen a la más leve sospecha de que promueve o defiende intereses encontrados con los de su cliente". Íd.*,* págs. 815-816. Pues, "[e]n caso de que surja alguna sospecha, es deber del abogado desligarse de la representación profesional que ostenta". Íd., pág. 816. Solo así, "se garantiza la más completa independencia de su juicio por parte de los abogados al desempeñar funciones profesionales y se evita que se erosione la confianza pública en las instituciones de justicia". Íd. Ahora bien, cabe destacar que no existe una norma absoluta en el Canon 21 que prohíba la representación legal sucesiva o simultánea de dos clientes ante la total ausencia de posible conflicto de intereses para ambas representaciones. Otaño v. Vélez, *supra*, pág. 827.

**D.**

Por último, el Canon 38 del Código de Ética Profesional establece en lo pertinente, que "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia…". 4 LPRA Ap. IX, C. 38. En *In re* Báez Genoval, el Tribunal Supremo

de Puerto Rico precisó la relación entre los Cánones 21 y 38 del Código de Ética Profesional. En el mencionado caso estableció que "cuando un abogado asume una representación simultánea de clientes o una representación sucesiva adversa que resulta en un real o potencial conflicto de intereses, incurre en una conducta que viola los Cánones 21 y 38 del Código de Ética Profesional". Íd., pág. 39.

En virtud de la norma anteriormente discutida, no cabe duda de que una violación al Canon 21 del Código Ética Profesional implica necesariamente una violación al Canon 38. No obstante, ante una solicitud de descalificación lo que debe resolver el tribunal es si, a la luz de la totalidad de las circunstancias y los factores a ser considerados de conformidad con nuestro ordenamiento jurídico y esbozados anteriormente, existe una apariencia de conducta impropia que justifique la descalificación de un abogado sopesando el derecho que le asiste a todo ciudadano de escoger libremente el abogado que lo represente. Sánchez Acevedo v. ELA, 125 DPR 432 (1990).

**III.**

En el presente caso, los Peticionarios nos solicitaron la revocación de la *Resolución* de 5 de febrero de 2025, toda vez que el TPI permitió que los abogados de los Recurridos continuaran su representación legal, a pesar de que también solicitaron en un pleito paralelo la certificación otra clase con demandantes distintos. Sostienen que la certificación de otra clase contra los mismos demandados crea un conflicto de intereses proscrito en nuestra jurisdicción. Razonan que la **"posible"** certificación de unos de los pleitos como una clase provocaría que el demandante del otro litigio presentado en el caso SJ2024CV11536 perdería su estatus de demandante activo.

Tras la evaluación exhaustiva del expediente ante nuestra consideración, al igual que los autos electrónicos del foro recurrido, encontramos que el foro *a quo* no indició ni se desprende de los mismos que haya actuado de forma arbitraria, caprichosa, haya abusado al ejercer su discreción o cometido algún error de derecho. Tampoco el Peticionario demostró que el TPI abusara de su discreción, actuara con perjuicio o cometiera un error manifiesto en su determinación.

En este caso, y como mencionáramos en el desglose de los hechos, los abogados de la parte recurrida se vieron obligados a presentar un pleito independiente, luego de que el foro de instancia denegara una solicitud de enmienda a las alegaciones y les requiriera a los Peticionarios presentar un caso distinto. Además, coincidimos con el juzgador de instancia, a los efectos de que en el presente caso no se manifiesta un conflicto de interés que deba evitarse. Tampoco percibimos cómo el hecho de que continúe la representación legal de los Recurridos le ocasionará algún perjuicio o desventaja indebida a los Peticionarios.

En suma, concluimos que de los autos no se desprende indicador alguno que requiera nuestra intervención con la *Resolución* recurrida y tampoco hallamos fundamento legal alguno que amerite la expedición del auto de *certiorari*, al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Resolución*, *denegamos* la expedición del auto de *certiorari* ante nos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones