ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV[1]**

| | | |
|---|---|---|
| **ORLANDO XAVIER CABRERA RODRÍGUEZ** <br> DEMANDANTE(S)-PETICIONARIA(S) <br><br><br> V. <br><br><br> **PEDRO JUAN MORALES FIGUEROA Y OTROS** <br> DEMANDADA(S)-RECURRIDA(S) | **KLCE202500497** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN** <br><br> Caso Núm. **BY2024CV07567 (702)** <br><br> Sobre: <br> Cobro de Dinero - Ordinario |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.

*Barresi Ramos*, juez ponente

# R E S O L U C I Ó N

En San Juan, Puerto Rico, hoy día 16 de julio de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **ORLANDO XAVIER CABRERA RODRÍGUEZ** (señor **CABRERA RODRÍGUEZ**) mediante *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera* instada el 6 de mayo de 2025. En su recurso, nos solicita que revisemos la *Orden* emitida el 24 de marzo de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[2] Mediante la susodicha decisión, el foro de instancia declaró no ha lugar la *Moción de Descalificación del Licenciado Rafael Quiñones Ayala* presentada el 9 de febrero de 2025 por el señor **CABRERA RODRÍGUEZ**.[3]

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025 sobre *Designación de Paneles en el Tribunal de Apelaciones*.
[2] Dicho dictamen judicial fue notificado y archivado en autos el 25 de marzo de 2025. Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, pág. 1.
[3] *Íd.*, págs. 57- 61.

## - I -

El señor **PEDRO JUAN MORALES FIGUEROA** (señor **MORALES FIGUEROA**) contrató, por escrito, al licenciado JOSÉ ANTONIO LÓPEZ RODRÍGUEZ (licenciado LÓPEZ RODRÍGUEZ) para un pleito sobre liquidación de comunidad de bienes ante el Tribunal de Primera Instancia, Sala Superior de San Juan.[4] El 5 de junio de 2023, el señor **CABRERA RODRÍGUEZ** se unió a la representación legal en dicho caso.[5] Tiempo después, el 29 de agosto de 2023, el licenciado **LÓPEZ RODRÍGUEZ** presentó su *Solicitud de Relevo de Representación Legal* por motivos de salud.[6] Como consecuencia, el señor **CABRERA RODRÍGUEZ** continuó fungiendo como representación legal del señor **MORALES FIGUEROA**.

El 21 de septiembre de 2023, se pautó juicio en su fondo, pero luego de negociaciones, las partes llegaron a un acuerdo transaccional poniendo fin al caso. Posteriormente, el 20 de diciembre de 2023, se dictó la *Sentencia*.[7]

Más tarde, el 19 de junio de 2024, el señor **CABRERA RODRÍGUEZ** le envió una factura al señor **MORALES FIGUEROA**.[8] Al no recibir el pago y/o respuesta alguna, el 20 de julio de 2024, le cursó una carta de cobro en la cual, entre otras cosas, le ofreció un plan de pago.[9] El 26 de julio de 2024, el señor **MORALES FIGUEROA** acusó recibo de la misiva de cobro.[10] El 29 de julio de 2024, el señor **CABRERA RODRÍGUEZ** suscribió un correo electrónico en el cual le concedió hasta el 5 de agosto de 2024 para que revisara las comunicaciones y dialogar sobre la deuda.[11]

---

[4] Ello concerniente al caso con alfanumérico SJ2020CV04052. Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, pág. 7.

[5] *Íd.*, pág. 7a.

[6] *Íd.*, págs. 8- 10. En su moción sobre renuncia de representación legal, el licenciado LÓPEZ RODRÍGUEZ expuso que no se adeudaban honorarios de abogados. La renuncia fue aceptada por el foro impugnado el 11 de septiembre de 2023.

[7] Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, págs. 11- 13.

[8] *Íd.*, págs. 46- 47.

[9] Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, pág. 48.

[10] *Íd.*, pág. 49.

[11] *Íd.*, pág. 50.

El 8 de agosto de 2024, el señor **CABRERA RODRÍGUEZ** signó una epístola concerniente a un documento recibido de la licenciada Pilar B. Pérez Rojas, representación legal de la señora Aracelis Méndez Muñiz, exesposa, sobre un cheque por la suma de $10,000.00 a nombre del señor **MORALES FIGUEROA.** Además, recordándole que de los haberes recobrados mediante la *Sentencia* por estipulación debía pagar el 20%.[12]

A los pocos días, el 12 de agosto de 2024, el señor **CABRERA RODRÍGUEZ** le mandó copia de su moción sobre renuncia de representación legal al señor **MORALES FIGUEROA**, mediante correo electrónico, y le reclamó la deuda por concepto de honorarios de abogados.[13] El 29 de agosto de 2024, el señor **CABRERA RODRÍGUEZ** tramitó copia de sus comunicaciones y reitero su requerimiento de pago de los honorarios de abogados, y apercibiendo que el incumplimiento conllevaría entablar una reclamación judicial.[14] El 6 de septiembre de 2024, mediante un comunicado, el señor **MORALES FIGUEROA** informó su interés en resolver el asunto.[15]

El día 9 de septiembre de 2024, el señor **CABRERA RODRÍGUEZ** le notificó al señor **MORALES FIGUEROA** que estaba dispuesto a conceder un plan de pago si decidía antes del 11 de septiembre de 2024. En respuesta, el 12 de septiembre de 2024, el señor **MORALES FIGUEROA** informó que cualquier correspondencia posterior debía dirigirse al licenciado PEDRO I. RIVERA MARTÍNEZ (el licenciado RIVERA MARTÍNEZ). Para coordinar la entrega del expediente y dar seguimiento al cobro, el 16 de septiembre de 2024, el señor **CABRERA RODRÍGUEZ** dirigió correspondencia al licenciado RIVERA MARTÍNEZ la cual no fue respondida.[16]

Varios meses después, el 25 de diciembre de 2024, el señor **CABRERA RODRÍGUEZ** interpuso *Demanda* sobre cobro de dinero, incumplimiento de

---

[12] Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, pág. 51.
[13] *Íd.*, págs. 52- 53.
[14] Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, págs. 55- 56.
[15] *Íd.*, pág. 54.
[16] *Íd.*, pág. 29.

contrato, daños y perjuicios, enriquecimiento injusto y libelo y calumnia contra el señor **MORALES FIGUEROA** y NILMAR V&M H/N/C AMELIA CLÍNICA LAB (NILMAR).[17] Alegó, entre otras cosas, que el señor **MORALES FIGUEROA** se negó a pagar los honorarios de abogados pactados y adeudados; y NILMAR es parte indispensable.

Así las cosas, el 9 de febrero de 2025, el señor **CABRERA RODRÍGUEZ** presentó *Moción de Descalificación del Licenciado Rafael Quiñones Ayala*.[18] Ello fundamentado en que el licenciado QUIÑONES AYALA no puede representar al señor **MORALES FIGUEROA** y NILMAR; así como, el señor **MORALES FIGUEROA** expone que NILMAR está descapitalizada para no tener que satisfacer los honorarios de abogado. El 3 de marzo de 2025, el señor **MORALES FIGUEROA** presentó *Moción en Cumplimiento de Orden (SUMAC 14)* en la cual acreditó que no existe conflicto de intereses. Asimismo, expuso que la corporación NILMAR no contrató al señor **CABRERA RODRÍGUEZ**.[19] Acto seguido, el 8 de marzo de 2025, el señor **CABRERA RODRÍGUEZ** presentó *Réplica a Escrito en Cumplimiento de Orden Reiterando Solicitud [de] Descalificación del Licenciado Rafael Quiñones Ayala*.[20]

Luego, el 24 de marzo de 2025, se intimó la *Orden* refutada por el Tribunal de Primera Instancia. En dicho fallo dispuso: "

> [...] No ha lugar a *Moción de Descalificación del Licenciado Rafael Quiñones Ayala* presentada el 9 de febrero de 2025 por la parte demandante. Entre otras, no surge de autos relación contractual entre el abogado demandante y la corporación demandada.
> El hecho de que el codemandado Sr. Morales Figueroa tenga algún interés económico y/o propietario en la corporación, que pudiese servir de garantía en un futuro para el cobro de una *Sentencia* de cobro de dinero; no hace a la corporación en este caso, parte indispensable del pleito de autos. En su día, el demandante tendrá los remedios pre y [post] *Sentencia* que proveen las Reglas Procedimiento Civil (2009).

El 26 de marzo de 2025, NILMAR presentó su *Contestación a la Demanda y Reconvención de la Codemandada Nimar V&M, Inc. h/n/c/ Amelia*

---

[17] Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, págs. 14- 33.
[18] *Íd*., págs. 57- 61.
[19] *Íd*., págs. 61a- 67.
[20] *Íd*., págs. 68- 75.

*Clinical Lab* conteniendo sus defensas afirmativas.[21] Planteó, entre ellas, que no contrató con el señor **CABRERA RODRÍGUEZ.**

El 8 de abril de 2025, el señor **CABRERA RODRÍGUEZ** presentó *Moción de Reconsideración Reiterando Solicitud de Descalificación del Licenciado Rafael Quiñones Ayala.*[22] Argumentó que el licenciado Quiñones Ayala está legalmente impedido de promover a la misma vez dos (2) propósitos contradictorios; y los intereses de NILMAR se pueden ver adversamente afectados por el litigio. Al otro día, el 9 de abril de 2025, se prescribió *Resolución y Orden* declarando no ha lugar a la moción de reconsideración.[23]

El 10 de abril de 2025, señor **MORALES FIGUEROA** presentó *Contestación a la Demanda y Reconvención del Codemandado Pedro Juan Morales Figueroa* conteniendo defensas afirmativas.[24] Enseguida, el 12 de abril de 2025, el señor **CABRERA RODRÍGUEZ** presentó una *Contestación a Reconvención (SUMAC No. 23).*

En desacuerdo, el 7 de mayo de 2025, el señor **CABRERA RODRÍGUEZ** recurrió ante este foro revisor señalando el(los) siguiente(s) error(es):

> Erró el TPI al no descalificar al licenciado Quiñones Ayala, no obstante, su claro conflicto de interés: el abogado conflictuado insiste en su pretensión de representar al demandado-recurrido Pedro Juan Morales Figueroa y a la Corporación Ni[l]mar.

El 9 de mayo de 2025, pronunciamos *Resolución* concediendo, entre otras cosas, un término perentorio de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* al señor **MORALES FIGUEROA**. El 23 de mayo de 2025, el señor **MORALES FIGUEROA** presentó su *Alegato en Oposición a Certiorari*.

El 9 de junio de 2025, el señor **CABRERA RODRÍGUEZ** presentó *Escrito Urgente sobre Craso Incumplimiento con el Reglamento por Parte de los Recurridos Solicitando el Desglose del Alegato y que se Tenga por No*

---

[21] Apéndice de la *Petición de Certiorari Civil de la Parte Demandante Orlando X. Cabrera*, págs. 84- 89.
[22] *Íd.*, págs. 2- 5.
[23] *Íd.*, pág. 6.
[24] *Íd.*, 90- 106.

*Presentado y Solicitando Otros Remedios*. Como reacción, el 16 de junio de 2025, el señor **MORALES FIGUEROA** presentó *Moción en Oposición a Escrito Radicado el 9 de junio de 2025, Imputando Incumplimiento con el Reglamento del Tribunal de Apelaciones*. El 20 de junio de 2025, intimamos *Resolución* a los efectos de declarar no ha lugar la solicitud de desglose del *Alegato en Oposición a Certiorari* presentado el 23 de mayo de 2025 y demás petitorios.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[25] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[26]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[27] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[28]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[29] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de

---

[25] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[26] *Íd.*
[27] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[28] *Íd.*
[29] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*

una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[30] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[31]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[32]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[33] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

---

[30] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[31] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supr*a, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[32] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[33] *Íd.*

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[34]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[35] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[36] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[37] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[38]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[39] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[40]

### - B - *La Descalificación*

La Regla 9.3 de las de Procedimiento Civil de 2009, dispone que, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y las abogadas que postulan ante sí, el Tribunal de Primera Instancia puede, a iniciativa propia o a solicitud de parte, descalificar a un abogado o una abogada que incurra en conducta que constituya un obstáculo para la sana

---

[34] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[35] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[36] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[37] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[38] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.
[39] *García v. Asociación*, 165 DPR 311, 322 (2005).
[40] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

administración de la justicia, o infrinja sus deberes hacia el foro, sus representados o sus colegas.[41]

> Como tal, la descalificación es una medida preventiva para evitar posibles infracciones a los cánones del Código de Ética Profesional. Además, la descalificación funge como un mecanismo para asegurar la adecuada marcha de un litigio evitando los actos disruptivos provenientes del abogado. Entiéndase que, en el manejo del caso, los jueces y las juezas tienen la potestad de descalificar a un abogado o una abogada si ello resulta necesario para lograr la solución justa, rápida y económica de los pleitos. Así, **la descalificación puede otorgarse con el fin de: (1) prevenir una violación a cualquiera de los cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados y las abogadas durante el trámite de un pleito**.[42]

Por tanto, aun cuando los procedimientos de descalificación no constituyen acciones disciplinarias, en muchas ocasiones, las descalificaciones funcionan como una medida para evitar posibles violaciones a los cánones de Ética Profesional.[43]

> Nótese que la descalificación puede darse por orden del tribunal *motu proprio* o cuando este accede a una solicitud de parte. Cuando la descalificación se dicta *motu proprio,* no es necesario que se aporte prueba sobre alguna infracción ética debido a que la apariencia de impropiedad podrá utilizarse en caso de duda a favor de la descalificación. Tampoco será estrictamente necesario que el tribunal reciba prueba adicional si la descalificación responde a la necesidad del juez o jueza de agilizar el trámite de un pleito. Lo anterior responde a que, en esos casos, de ordinario, las circunstancias que motivan la descalificación han ocurrido en presencia del magistrado o magistrada que maneja el caso. No obstante, la extensión del derecho a ser oído se cumple al darle al abogado o abogada la oportunidad de reaccionar cuando el juez o la jueza que pretende su descalificación expresa las razones sobre la procedencia de esta.

> En cambio, **cuando la descalificación la solicita la parte adversa, la mera presentación de la moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión**.[44]

En estos casos, el tribunal deberá hacer un análisis de la totalidad de las circunstancias de acuerdo con los siguientes factores:

> (i) si quien solicita la descalificación tiene **legitimación activa** para invocarla; (ii) la **gravedad de la posible violación** ética involucrada; (iii) la **complejidad** del **derecho** o los **hechos** pertinentes a la controversia y el *expertise* de los abogados

---

[41] 32 LPRA Ap. V.

[42] *ORIL v. El Farmer Inc.,* 204 DPR 229, 241 (2020) (comillas y citas omitidas).

[43] *Job Connection Center v. Sups. Econo,* 185 DPR 585, 596 (2012).

[44] *ORIL v. El Farmer Inc., supra,* pág. 242 (énfasis suplido) (comillas omitidas); *Job Connection Center v. Sups. Econo, supra,* pág. 597.

implicados; (iv) la **etapa de los procedimientos** en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el **propósito** detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos.[45]

Como criterios adicionales, el tribunal debe discernir si la continuación de la representación legal le causará perjuicio o desventaja indebida a quien la solicita.[46] "Al considerar esta serie de factores, el tribunal deberá sopesar, además, el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente".[47]

Adicionalmente, cuando es una parte adversa la que interpone una solicitud de descalificación, el derecho a un debido proceso de ley exige que el abogado o la abogada contra la cual se presenta la moción sea oído y **tenga la oportunidad de presentar prueba en su defensa antes de que el tribunal resuelva el asunto**.[48] Distinto a estos casos, cuando es el tribunal el que ordena la descalificación *motu proprio,* el derecho a ser oído se cumple al darle la oportunidad al abogado de reaccionar cuando el juez manifiesta las razones por las que procedería la descalificación.[49]

En definitiva, la descalificación solo procederá cuando sea estrictamente necesaria, pues se considera un remedio drástico que debe evitarse si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes.[50]

### - C - *Representación Simultánea Adversa*

El Canon 21 de Ética Profesional consagra el deber de lealtad que todo abogado le debe a sus clientes.[51] No es propio de un profesional del derecho representar intereses encontrados. Un(a) abogado(a) representa intereses encontrados cuando en beneficio de un cliente tiene el deber de abogar por

---

[45] *Íd.,* págs. 597- 598; *Otaño v. Vélez,* 141 DPR 820, 828 (1996).
[46] *Job Connection Center v. Sups. Econo, supra,* pág. 598.
[47] *Otaño v. Vélez, supra,* pág. 828.
[48] *Job Connection Center v. Sups. Econo, supra,* pág. 598; *ORIL v. El Farmer Inc., supra,* pág. 243; *Meléndez v. Caribbean Int'l News,* 151 DPR 649, 670 (2000).
[49] *Job Connection Center v. Sups. Econo, supra,* págs. 598- 599.
[50] *Íd.,* pág. 597.
[51] 4 LPRA Ap. IX.

aquello a lo que le correspondería oponerse en cumplimiento de sus obligaciones para con otro cliente.

Un(a) abogado(a) no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente. La representación simultánea adversa supone la existencia de una relación abogado cliente *dual* en la cual un letrado tenga que defender aquello a lo que debería oponerse en cumplimiento con sus deberes para con otro cliente. La referida doctrina pretende preservar la autonomía en el juicio del(de la) abogado(a), a fin de evitar un quebrantamiento en la fidelidad que debe a la causa de aquellos a quienes representa.[52]

### - III -

En su recurso, el señor CABRERA RODRÍGUEZ sostiene que la determinación impugnada es errónea, toda vez que procede la descalificación del licenciado QUIÑONES AYALA. Enfatiza que el interés del señor MORALES FIGUEROA es hacer lucir a la corporación **NIMAR** como una corporación empobrecida, para alegar que está descapitalizada y, por eso, no puede pagar los alegados honorarios adeudados. Por lo antes, suplica que se le ordene a tanto al señor MORALES FIGUEROA, como a la corporación **NIMAR** a que contraten representación legal por separado. En la situación de hechos atinente, el señor CABRERA RODRÍGUEZ argumenta que, en vista de que la representación legal del señor MORALES FIGUEROA comparece en su nombre y en el de la corporación **NIMAR** conjuntamente, procede su descalificación por haber incurrido en una representación simultánea adversa.

Por su parte, el señor MORALES FIGUEROA aduce que el señor CABRERA RODRÍGUEZ y la corporación **NIMAR** no han suscrito contrato alguno, por lo que la entidad corporativa no es parte indispensable en este pleito. Concluye que el licenciado QUIÑONES AYALA no está representando intereses encontrados, y su lealtad es hacia sus clientes. Acentúa que el licenciado

---

[52] *In re Báez Genoval*, 175 DPR 28 (2008).

QUIÑONES AYALA está representando a una persona natural en el pleito sobre incumplimiento de contrato y a una persona jurídica que nunca suscribió un contrato con el señor CABRERA RODRÍGUEZ.

Acotamos en la exposición sobre el derecho, que la representación legal simultánea adversa infiere la existencia de una relación abogado-cliente dual en la que el(la) letrado(a) tenga que defender aquello a lo que debería oponerse en cumplimiento con sus deberes para con otro cliente. Contrario a esta deducción, en el presente caso, los intereses tanto del señor MORALES FIGUEROA, como los de la corporación **NIMAR** están alineados o son los mismos, por lo que los deberes de su representación legal no corren peligro de sufrir la bifurcación que se pretende evitar con una descalificación bajo la causal de representación legal simultánea adversa.

Acorde con lo anterior, debemos colegir que el señor CABRERA RODRÍGUEZ no nos ha puesto en posición para intervenir con la determinación recurrida sobre la solicitud de descalificación del licenciado QUIÑONES AYALA. Esto es, como tribunal revisor, solo debemos intervenir con las determinaciones interlocutorias del foro primario cuando se demuestre que este último actuó con perjuicio, parcialidad, con craso abuso de su discreción o se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. Nada en este expediente nos convenció para utilizar nuestra función revisora en esta etapa de los procedimientos. Sus planteamientos no nos mueven para inmiscuirnos en el manejo del caso o en la discreción del (de la) juez quien presidió la sala y determinó que no procedía la *descalificación* del licenciado QUIÑONES AYALA.

- **IV** -

Por los fundamentos antes expuestos, ***denegamos*** la expedición del auto de *Certiorari* incoado el 6 de mayo de 2025 por el señor ORLANDO XAVIER CABRERA RODRÍGUEZ.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones